IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 080-03






CHARLES DWAYNE THORNTON, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Price, J. filed a concurring opinion.


O P I N I O N 




 I agree with the majority that a causal connection exists between the appellant's
illegal arrest in Arizona and the evidence that was admitted in Texas that showed that the
appellant committed a sexual assault in Arizona. I also agree with the majority that the
evidence in this case should not be suppressed because the taint of the appellant's illegal
Arizona arrest was attenuated by the fact that the evidence admitted in his Texas trial was
not obtained illegally by Texas authorities. I write separately because I disagree with some
of the points made in the opinion.

 A discussion that appears at the end of the opinion seems to address the question
whether it is possible for the appellant's identity to be the suppressible fruit of the illegal
Arizona arrest. The majority concludes that, because a majority of Supreme Court justices
in United States v. Crews (1) concluded that a defendant's face cannot be the suppressible
fruit of a constitutional violation, (2) DNA evidence linking the defendant to the offense in
Arizona also could not be suppressible.

 In Crews, the Supreme Court held that the fact that the appellant had been illegally
detained did not require that an in-court identification by a robbery victim in the case be
suppressed. (3) Justice Brennan delivered the lead opinion in the case and the opinion of the
Court with the exception of Part IID, in which he left open the question whether a
defendant's person should be considered evidence and, as a result, could be suppressed
because of an illegal arrest. (4) The lead opinion concluded that because before the police
illegally arrested the defendant, the victim had given a description of the defendant that
matched his appearance. (5) As a result, the victim's in-court identification could not have
been tainted by police misconduct.

 Five justices did not join Part IID of Justice Brennan's opinion. (6) Instead, they relied
upon the Court's holding in Frisbie v. Collins (7) that a defendant may be properly brought to
trial despite the fact that his arrest was violative of the federal constitution. Thus, a
majority of the Supreme Court seems to have concluded that a person's face cannot be
suppressed merely because he was illegally arrested.

 If we were dealing with the identification of the appellant's face, the concurring
opinions in Crews would be persuasive. (8) But I am not sure whether the same proposition
ought to apply to DNA evidence. 

 The face and how it appears is evidence of identity. A witness can take his memory
of an offense and compare it to a defendant's appearance in Court. DNA evidence is also
evidence of identity. A scientist can compare DNA evidence obtained from a crime scene
to DNA evidence from a defendant. Fingerprints are also evidence of identity. A
fingerprint expert can compare fingerprints from a crime scene to a defendant's
fingerprints.

 Of course, we are not really talking about suppressing a person's face. It is the
testimony that links the defendant in court to the identifying evidence or appearance left at
the scene of the crime that is or is not suppressed. And the Supreme Court has held that,
under certain circumstances, a witness's in-court identification may be suppressed. (9) Also,
the Supreme Court has held that, under certain circumstances, fingerprint identification
may be suppressed. (10) 

 I do not think that Crews, alone, could sufficiently disposes of this case. And we
need not even reach that question because, as the majority explains, the taint of the
appellant's illegal arrest is attenuated by the fact that the Texas authorities did not violate
the appellant's rights. (11)

 I disagree with the majority that time or interceding events attenuated the taint. 
Although these factors seem logically appropriate in the context of a statement obtained
after an illegal seizure, I do not see their relevance in this context. If less time had passed,
the Texas authorities' lack of complicity in the constitutional violation would be no
different. The same is true for the interceding events described by the majority.

 At bottom, I agree with Judge Womack's concurrence that, because the evidence
used in Texas was not illegally obtained, the evidence was admissible. But I reach that
conclusion after considering (1) whether there was a causal connection between the
appellant's arrest in Arizona and the evidence used in Texas and (2) whether the taint of the
illegal arrest was attenuated. I conclude that there was a causal connection and that the taint
was attenuated. As a result, I concur in the judgment.


Filed: September 22, 2004.

Publish.
1. 445 U.S. 463 (1980).
2. Id., at 477 (Powell, J., concurring, in which Blackmun, J., joined); Id., at 477-78 (White, J.,
concurring, which Burger, C.J., and Rehnquist, J., joined).
3. Id., at 477.
4. Id., at 474-77.
5. Ibid.
6. Id., at 477 (Powell, J., concurring, in which Blackmun, J., joined); Id., at 477-78 (White, J.,
concurring, which Burger, C.J., and Rehnquist, J., joined).
7. 342 U.S 519 (1952).
8. This is merely persuasive authority because the Court was not directly addressing this question
in Crews and because the 
9. See Stovall v. Denno, 388 U.S. 293, 301 (1967).
10. See Davis v. Mississippi, 394 U.S. 721, 727 (1969).
11. Brown v. Illinois, 442 U.S. 590, 604 (1975).